CSM LEGAL, P.C.
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
VICENTE MOISES FALCON MORAN,
MARIO MENDEZ, and JORGE GUZMAN
MARIN, *individually and on behalf of others*
*similarly situated,*

                              *Plaintiffs*,

          -against-

P.R. CREPE LTD.  (D/B/A JOHN'S COFFEE
SHOP), NICK RIGOGIANNIS, NIKOLAS
TSINIAS, and GEORGE J. TSINIAS,

                           *Defendants.*
-------------------------------------------------------X

**COMPLAINT**

**COLLECTIVE ACTION UNDER**
**29 U.S.C. § 216(b)**

**ECF Case**

     Plaintiffs Vicente Moises Falcon Moran, Mario Mendez, and Jorge Guzman Marin,

individually and on behalf of others similarly situated (collectively, "Plaintiffs"), by and through

their attorneys, CSM Legal, P.C., upon their knowledge and belief, and as against P.R. Crepe LTD.

(d/b/a John's Coffee Shop), ("Defendant Corporation"), Nick Rigogiannis, Nikolas Tsinias, and

George J. Tsinias, ("Individual Defendants"), (collectively, "Defendants"), allege as follows:

<u>**NATURE OF ACTION**</u>

     1.     Plaintiffs are former employees of Defendants P.R. Crepe LTD. (d/b/a John's Coffee

Shop), Nick Rigogiannis, Nikolas Tsinias, and George J. Tsinias.

     2.      Defendants own, operate, or control an American restaurant, located at 823 2nd Ave

New York, NY 10017 under the name "John's Coffee Shop".

3.     Upon information and belief, individual Defendants Nick Rigogiannis, Nikolas Tsinias, and George J. Tsinias, serve or served as owners, managers, principals, or agents of Defendant Corporation and, through this corporate entity, operate or operated the restaurant as a joint or unified enterprise.

4.     Plaintiffs were employed as busboys, dishwashers, cooks, grill workers, and food preparers at the restaurant located at 823 2nd Ave New York, NY 10017.

5.     At all times relevant to this Complaint, Plaintiffs worked for Defendants in excess of 40 hours per week, without appropriate overtime compensation for the hours that they worked.

6.     Rather, Defendants failed to maintain accurate recordkeeping of the hours worked and failed to pay Plaintiffs appropriately for any hours worked, either at the straight rate of pay or for any additional overtime premium.

7.     Defendants' conduct extended beyond Plaintiffs to all other similarly situated employees.

8.     At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs and other employees to work in excess of forty (40) hours per week without providing the overtime compensation required by federal and state law and regulations.

9.     Plaintiffs now bring this action on behalf of themselves, and other similarly situated individuals, for unpaid overtime wages pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq*. ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq*. and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

10.     Plaintiffs seek certification of this action as a collective action on behalf of themselves, individually, and all other similarly situated employees and former employees of Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the FLSA, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367(a).

12.      Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all, or a substantial portion of, the events or omissions giving rise to the claims occurred in this district, Defendants maintain their corporate headquarters and offices within this district, and Defendants operate an American restaurant located in this district. Further, Plaintiffs were employed by Defendants in this district.

## PARTIES

*Plaintiffs*

13.     Plaintiff Vicente Moises Falcon Moran ("Plaintiff Falcon" or "Mr. Falcon") is an adult individual residing in New York County, New York.

14.     Plaintiff Falcon was employed by Defendants at John's Restaurant from approximately 1990 until on or about February 20, 2022.

15.     Plaintiff Mario Mendez ("Plaintiff Mendez" or "Mr. Mendez") is an adult individual residing in Hudson County, New Jersey.

16.     Plaintiff Mendez was employed by Defendants at John's Restaurant from approximately November 1, 2021 until on or about March 11, 2022.

17.     Plaintiff Jorge Guzman Marin ("Plaintiff Guzman" or "Mr. Guzman") is an adult individual residing in New York County, New York.

18.     Plaintiff Guzman was employed by Defendants at John's Restaurant from approximately 2013 until on or about May 14th, 2022.

*Defendants*

19.    At all relevant times, Defendants owned, operated, or controlled an American restaurant, located at 823 2nd Ave New York, NY 10017 under the name "John's Coffee Shop".

20.    Upon information and belief, P.R. Crepe LTD. (d/b/a John's Coffee Shop) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, it maintains its principal place of business at 823 2nd Ave New York, NY 10017.

21.    Defendant Nick Rigogiannis is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nick Rigogiannis is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nick Rigogiannis possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

22.    Defendant Nikolas Tsinias is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant Nikolas Tsinias is sued individually in his capacity as owner, officer and/or agent of Defendant Corporation. Defendant Nikolas Tsinias possesses operational control over Defendant Corporation, an ownership interest in Defendant Corporation, and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

23.     Defendant George J. Tsinias is an individual engaging (or who was engaged) in business in this judicial district during the relevant time period. Defendant George J. Tsinias is sued individually in his capacity as a manager of Defendant Corporation. Defendant George J. Tsinias possesses operational control over Defendant Corporation and controls significant functions of Defendant Corporation. He determines the wages and compensation of the employees of Defendants, including Plaintiffs, establishes the schedules of the employees, maintains employee records, and has the authority to hire and fire employees.

## FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

24.     Defendants operate an American restaurant located in the Tudor City section of Manhattan in New York City.

25.     Individual Defendants, Nick Rigogiannis, Nikolas Tsinias, and George J. Tsinias, possess operational control over Defendant Corporation, possess ownership interests in Defendant Corporation, or control significant functions of Defendant Corporation.

26.     Defendants are associated and joint employers, act in the interest of each other with respect to employees, pay employees by the same method, and share control over the employees.

27.     Each Defendant possessed substantial control over Plaintiffs' (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiffs, and all similarly situated individuals, referred to herein.

28.     Defendants jointly employed Plaintiffs (and all similarly situated employees) and are Plaintiffs' (and all similarly situated employees') employers within the meaning of 29 U.S.C. 201 *et seq*. and the NYLL.

29.     In the alternative, Defendants constitute a single employer of Plaintiffs and/or similarly situated individuals.

30.     Upon information and belief, Individual Defendants Nick Rigogiannis and Nikolas Tsinias operate Defendant Corporation as either an alter ego of themselves and/or failed to operate Defendant Corporation as an entity legally separate and apart from themselves, by among other things:

a)  failing to adhere to the corporate formalities necessary to operate Defendant Corporation as a Corporation,

b)  defectively forming or maintaining the corporate entity of Defendant Corporation, by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records,

c)  transferring assets and debts freely as between all Defendants,

d)  operating Defendant Corporation for their own benefit as the sole or majority shareholders,

e)  operating Defendant Corporation for their own benefit and maintaining control over this corporation as a closed Corporation,

f)  intermingling assets and debts of their own with Defendant Corporation,

g)  diminishing and/or transferring assets of Defendant Corporation to avoid full liability as necessary to protect their own interests, and

h)  Other actions evincing a failure to adhere to the corporate form.

31.     At all relevant times, Defendants were Plaintiffs' employers within the meaning of the FLSA and New York Labor Law. Defendants had the power to hire and fire Plaintiffs, controlled

the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiffs' services.

32.     In each year from 2016 to 2022, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

33.     In addition, upon information and belief, Defendants and/or their enterprise were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis are goods produced outside of the State of New York.

*Individual Plaintiffs*

34.     Plaintiffs are former employees of Defendants who were employed as busboys, dishwashers, cooks, grill workers, and food preparers.

35.     Plaintiffs seek to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

*Plaintiff Vicente Moises Falcon Moran*

36.     Plaintiff Falcon was employed by Defendants from approximately 1990 until on or about February 20, 2022.

37.     Defendants employed Plaintiff Falcon as a grill worker and a food preparer.

38.     Plaintiff Falcon regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

39.     Plaintiff Falcon's work duties required neither discretion nor independent judgment.

40.     Throughout his employment with Defendants, Plaintiff Falcon regularly worked in excess of 40 hours per week.

41.     Throughout his employment, Plaintiff Falcon regularly worked shifts of around 10 hours or more a day.

42.     From approximately May 2016 until on or about 2019, Plaintiff Falcon worked from approximately 10:00 a.m. until on or about 8:00 p.m., Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m., Saturdays through Sundays (typically 71 hours per week).

43.     From approximately January 2020 until on or about March 20, 2020, Plaintiff Falcon worked from approximately 10:00 a.m. until on or about 8:00 p.m. to 8:30 p.m., Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m., Saturdays through Sundays (typically 71 to 73.50 hours per week).

44.     From approximately July 2020 until on or about February 20, 2022, Plaintiff Falcon worked from approximately 10:00 a.m. until on or about 8:00 p.m. to 8:30 p.m., Mondays through Fridays and from approximately 6:00 a.m. until on or about 4:30 p.m., Saturdays through Sundays (typically 71 to 73.50 hours per week).

45.     From approximately May 2016 until on or about March 2020, Defendants paid Plaintiff Falcon his wages in cash.

46.     From approximately July 2020 until on or about February 20, 2022, Defendants paid Plaintiff Falcon his wages by check.

47.     From approximately May 2016 until on or about December 2017, Defendants paid Plaintiff Falcon $700 a week.

48.     From approximately January 2018 until on or about December 2019, Defendants paid Plaintiff Falcon $760 a week.

49.     From approximately January 2020 until on or about March 20, 2020, Defendants paid Plaintiff Falcon $15.00 per hour.

50.     From approximately July 2020 until on or about February 20, 2021, Defendants paid Plaintiff Falcon $15.00 per hour.

51.     Plaintiff Falcon's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

52.     For example, Defendants required Plaintiff Falcon to work an additional 30 minutes before and after his scheduled departure time 3 days a week, and did not pay him for the additional time he worked.

53.     Defendants never granted Plaintiff Falcon any breaks or meal periods of any kind.

54.     Until July 2020, Plaintiff Falcon was not required to keep track of his time, nor to his knowledge, did the Defendants utilize any time tracking device such as punch cards, that accurately reflected his actual hours worked.

55.     From approximately July 2020, Plaintiff Falcon was required to keep track of his time. However, Defendants required him to record fewer hours than he actually worked. As an example, Plaintiff Falcon would punch in at 7:30 a.m., even though he started his shift at 6:00 a.m. As a result, Plaintiff Falcon was not compensated for all of the hours that he worked.

56.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Falcon regarding overtime and wages under the FLSA and NYLL.

57.     Defendants did not provide Plaintiff Falcon an accurate statement of wages, as required by NYLL 195(3).

58.     In fact, Defendants adjusted Plaintiff Falcon's paystubs so that they reflected inaccurate wages and hours worked.

59.     Defendants did not give any notice to Plaintiff Falcon, in English and in Spanish (Plaintiff Falcon's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Plaintiff Mario Mendez*

60.     Plaintiff Mendez was employed by Defendants from approximately November 1, 2021 until on or about March 11, 2022.

61.     Defendants employed Plaintiff Mendez as a cook and a grill worker.

62.     Plaintiff Mendez regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

63.     Plaintiff Mendez's work duties required neither discretion nor independent judgment.

64.     Throughout his employment with Defendants, Plaintiff Mendez regularly worked in excess of 40 hours per week.

65.     From approximately November 1, 2021 until on or about March 11, 2022, Plaintiff Mendez worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45 hours per week).

66.     Throughout his employment, Defendants paid Plaintiff Mendez his wages in a combination of check and cash.

67.     From approximately November 1, 2021 until on or about March 11, 2022, Defendants paid Plaintiff Mendez $15.00 per hour.

68.     Plaintiff Mendez's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

69.     For example, Defendants required Plaintiff Mendez to work an additional 30 minutes past his scheduled departure time two days a week, and did not pay him for the additional time he worked.

70.     Defendants never granted Plaintiff Mendez any breaks or meal periods of any kind.

71.     Nevertheless, Defendants deducted 30 minutes from Plaintiff Mendez's weekly paycheck for meals he never ate.

72.     Although Plaintiff Mendez was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. For example, Plaintiff Mendez punched in at 7:30 a.m. even though he started his shift at 7:00 a.m. As a result, Plaintiff Mendez was not compensated for all of the hours that he worked.

73.     On a number of occasions, Defendants required Plaintiff Mendez to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

74.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Mendez regarding overtime and wages under the FLSA and NYLL.

75.     Defendants did not provide Plaintiff Mendez an accurate statement of wages, as required by NYLL 195(3).

76.     In fact, Defendants adjusted Plaintiff Mendez's paystubs so that they reflected inaccurate wages and hours worked.

77.     Defendants did not give any notice to Plaintiff Mendez, in English and in Spanish (Plaintiff Mendez's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

78.     Defendants required Plaintiff Mendez to purchase "tools of the trade" with his own funds—including one pair of pants and one shirt.

*Plaintiff Jorge Guzman Marin*

79.     Plaintiff Guzman was employed by Defendants from approximately 2013 until on or about May 14, 2022.

80.     Defendants employed Plaintiff Guzman as a busboy, food preparer, cooking assistant, and dishwasher.

81.     Plaintiff Guzman regularly handled goods in interstate commerce, such as food and other supplies produced outside the State of New York.

82.     Plaintiff Guzman's work duties required neither discretion nor independent judgment.

83.     Throughout his employment with Defendants, Plaintiff Guzman regularly worked in excess of 40 hours per week.

84.     From approximately June 2016 until on or about March 20, 2020, Plaintiff Guzman worked from approximately 6:00 a.m. until on or about 4:00 p.m., 6 days a week (typically 60 hours a week)

85.     From approximately July 2020 until on or about January 2022, Plaintiff Guzman worked from approximately 7:00 a.m. to 4:00 p.m., 3 to 4 days a week (typically 27 to 36 hours a week).

86.     From approximately February 2022 until on or about May 14, 2022, Plaintiff Guzman worked from approximately 7:00 a.m. until on or about 4:00 p.m., 5 days a week (typically 45.66 hours a week).

87.     Throughout his employment, Defendants paid Plaintiff Guzman a combination of cash and check.

88.     From approximately June 2016 until on or about 2019, Defendants paid Plaintiff

- 12 -

Guzman $450 a week in cash.

89.     From approximately 2020 until on or about May 14th, 2022, Defendants paid Plaintiff Guzman $15.00 per hour.

90.     Plaintiff Guzman's pay did not vary even when he was required to stay later or work a longer day than his usual schedule.

91.     For example, Defendants required Plaintiff Guzman to work an additional 1 hour past his scheduled departure time five days a week until 2019, and did not pay him for the additional time he worked.

92.     Defendants never granted Plaintiff Guzman any breaks or meal periods of any kind.

93.     Nevertheless, Defendants deducted 30 minutes from Plaintiff Mendez's weekly paycheck for meals he never ate.

94.     Although Plaintiff Guzman was required to keep track of his time, Defendants required him to record fewer hours than he actually worked. For example, Plaintiff Guzman had to punch in at 7:30 a.m. during the period of time his shift started at 7:00 a.m. As a result, Plaintiff Guzman was not compensated for all of the hours that he worked.

95.     On a number of occasions, Defendants required Plaintiff Guzman to sign a document, the contents of which he was not allowed to review in detail, in order to release his weekly pay.

96.     No notification, either in the form of posted notices or other means, was ever given to Plaintiff Guzman regarding overtime and wages under the FLSA and NYLL.

97.     Defendants did not provide Plaintiff Guzman an accurate statement of wages, as required by NYLL 195(3).

98.     In fact, Defendants adjusted Plaintiff Guzman's paystubs so that they reflected inaccurate wages and hours worked.

99.     Defendants did not give any notice to Plaintiff Guzman, in English and in Spanish (Plaintiff Guzman's primary language), of his rate of pay, employer's regular pay day, and such other information as required by NYLL §195(1).

*Defendants' General Employment Practices*

100.    At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiffs (and all similarly situated employees) to work in excess of 40 hours a week without paying them appropriate overtime compensation as required by federal and state laws.

101.    Plaintiffs were victims of Defendants' common policy and practices which violate their rights under the FLSA and New York Labor Law by, *inter alia*, not paying them the wages they were owed for the hours they worked.

102.    Defendants habitually required Plaintiffs to work additional hours beyond their regular shifts but did not provide them with any additional compensation.

103.    Defendants' time keeping system did not reflect the actual hours that Plaintiff Falcon worked.

104.    Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL by failing to maintain accurate and complete timesheets and payroll records.

105.    On a number of occasions, Defendants required Plaintiffs to sign a document the contents of which they were not allowed to review in detail. Defendants paid Plaintiffs their wages in a combination of check and cash.

106.     Defendants failed to post at the workplace, or otherwise provide to employees, the required postings or notices to employees regarding the applicable wage and hour requirements of the FLSA and NYLL.

107.     Upon information and belief, these practices by Defendants were done willfully to disguise the actual number of hours Plaintiffs (and similarly situated individuals) worked, and to avoid paying Plaintiffs properly for their full hours worked.

108.     Defendants engaged in their unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

109.     Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiffs and other similarly situated former workers.

110.     Defendants failed to provide Plaintiffs  and other employees with accurate wage statements at the time of their payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

111.     Defendants failed to provide Plaintiffs  and other employees, at the time of hiring and on or before February 1 of each subsequent year, a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name

of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

112.    Plaintiffs bring their FLSA overtime compensation and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons (the "FLSA Class members"), i.e., persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the complaint in this case (the "FLSA Class Period").

113.    At all relevant times, Plaintiffs and other members of the FLSA Class were similarly situated in that they had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans including willfully failing and refusing to pay them the required overtime pay at a one and one-half their regular rates for work in excess of forty (40) hours per workweek under the FLSA and willfully failing to keep records under the FLSA.

114.    The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA

115.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

116.    At all times relevant to this action, Defendants were Plaintiffs' employers (and employers of the putative FLSA Class members) within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiffs (and the FLSA Class members), controlled the terms and conditions of employment, and determined the rate and

method of any compensation in exchange for their employment.

117.    At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

118.    Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act. 29 U.S.C. § 203 (r-s).

119.    Defendants, in violation of 29 U.S.C. § 207(a)(1), failed to pay Plaintiffs (and the FLSA Class members) overtime compensation at a rate of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

120.    Defendants' failure to pay Plaintiffs (and the FLSA Class members), overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

121.    Plaintiffs (and the FLSA Class members) were damaged in an amount to be determined at trial.

<u>**SECOND CAUSE OF ACTION**</u>

**VIOLATION OF THE OVERTIME PROVISIONS**

**OF THE NEW YORK STATE LABOR LAW**

122.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

123.    Defendants, in violation of N.Y. Lab. Law § 190 *et seq*., and supporting regulations of the New York State Department of Labor, failed to pay Plaintiffs overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a work week.

124.    Defendants' failure to pay Plaintiffs overtime compensation was willful within the meaning of N.Y. Lab. Law § 663.

125.    Plaintiffs were damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION

## VIOLATION OF THE NOTICE AND RECORDKEEPING

## REQUIREMENTS OF THE NEW YORK LABOR LAW

126.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

127.    Defendants failed to provide Plaintiffs with a written notice, in English and in Spanish (Plaintiffs' primary language), containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL §195(1).

128.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FOURTH CAUSE OF ACTION

## VIOLATION OF THE WAGE STATEMENT PROVISIONS

## OF THE NEW YORK LABOR LAW

129.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

130.    With each payment of wages, Defendants failed to provide Plaintiffs with an accurate statement listing each of the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular

hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL 195(3).

131.    Defendants are liable to each Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

## FIFTH CAUSE OF ACTION

## RECOVERY OF EQUIPMENT COSTS

132.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

133.    Defendants required Plaintiffs to pay, without reimbursement, the costs and expenses for purchasing and maintaining equipment and "tools of the trade" required to perform their jobs, further reducing their wages in violation of the FLSA and NYLL. 29 U.S.C. § 206(a); 29 C.F.R. § 531.35; N.Y. Lab. Law §§ 193 and 198-b.

134.    Plaintiffs were damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION

## UNLAWFUL DEDUCTIONS FROM WAGES IN VIOLATION

## OF THE NEW YORK LABOR LAW

135.    Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

136.    At all relevant times, Defendants were Plaintiffs' employers within the meaning of the N.Y. Lab. Law §§ 2 and 651.

137.    Defendants made unlawful deductions from Plaintiffs' wages including, but not limited to, deductions for meals they never ate.

138.    The deductions made from Plaintiffs 'wages were not authorized or required by law.

139.     Through their knowing and intentional efforts to take unauthorized deductions from Plaintiffs' wages, Defendants willfully violated NYLL, Article 6, §§ 190 *et seq.*, and supporting New York State regulations.

Plaintiffs were damaged in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants by:

(a)     Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members apprising them of the pendency of this action, and permitting them to promptly file consents to be Plaintiffs in the FLSA claims in this action;

(b)     Declaring that Defendants violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiffs and the FLSA Class members;

(c)     Declaring that Defendants violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiffs' and the FLSA Class members' compensation, hours, wages, and any deductions or credits taken against wages;

(d)     Declaring that Defendants' violations of the provisions of the FLSA were willful as to Plaintiffs and the FLSA Class members;

(e)     Awarding Plaintiffs and the FLSA Class members damages for the amount of unpaid overtime compensation and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(f)     Awarding Plaintiffs and the FLSA Class members liquidated damages in an amount

equal to 100% of their damages for the amount of unpaid overtime compensation, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(g)     Declaring that Defendants violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiffs;

(h)     Declaring that Defendants violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiffs' compensation, hours, wages and any deductions or credits taken against wages;

(i)     Declaring that Defendants' violations of the provisions of the NYLL were willful as to Plaintiffs;

(j)     Awarding Plaintiffs damages for the amount of unpaid overtime compensation, and for any improper deductions or credits taken against wages as applicable

(k)     Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(l)     Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(m)     Awarding Plaintiffs and the FLSA Class members pre-judgment and post-judgment interest as applicable;

(n)     Awarding Plaintiffs and the FLSA Class members the expenses incurred in this action, including costs and attorneys' fees;

(o)     Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal

is then pending, whichever is later, the total amount of judgment shall automatically increase by

fifteen percent, as required by NYLL § 198(4); and

(p)    All such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated: New York, New York

May 17, 2022

CSM Legal, P.C

By:  _____/s/ Catalina Sojo, Esq._____
Catalina Sojo [CS-5779517]
60 East 42nd Street, Suite 4510
New York, New York 10165
Telephone: (212) 317-1200
Facsimile: (212) 317-1620
*Attorneys for Plaintiffs*

# CSM Legal, P.C.
Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

March 25, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Vicente Moises Falcon Moran

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:                _____

Date / Fecha:                     25 de marzo 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42ⁿᵈ Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

———————

catalina@csmlegal.com

March 25, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Mario Mendez

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:                 *Mario Mendez*

Date / Fecha:                      25 de marzo 2022

*Certified as a minority-owned business in the State of New York*

# CSM Legal, P.C.

### Employment and Litigation Attorneys

60 E 42nd Street, Suite 4510
New York, New York 10165

Telephone: (212) 317-1200
Facsimile: (212) 317-1620

catalina@csmlegal.com

May 25, 2022

BY HAND

TO:    Clerk of Court,

I hereby consent to join this lawsuit as a party plaintiff.
**(Yo, por medio de este documento, doy mi consentimiento para formar parte de la demanda como uno de los demandantes.)**

Name / Nombre:                    Jorge Guzman Marin

Legal Representative / Abogado:    CSM Legal, P.C.

Signature / Firma:

Date / Fecha:                     25 de Mayo 2022

*Certified as a minority-owned business in the State of New York*